UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Civil No. 06CV2439-L(AJB) |
| Plaintiff, | ) **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | ) |
| $10,000.00 IN U.S. CURRENCY, | ) |
| Defendant. | ) |

In this action, Plaintiff the United States of America ("government") seeks forfeiture of $10,000 in U.S. Currency in accordance with 21 U.S.C. § 881(a)(6). Claimant Mark Conti ("Conti") moves for summary judgment pursuant to 18 U.S.C. § 983(a), contending the government's complaint for forfeiture was untimely filed and that the government failed to provide timely notice of seizure. The government filed an opposition and Conti replied. For the reasons which follow, Conti's motion for summary judgment is **GRANTED**.

On February 9, 2006, postal inspectors became suspicious of an express mail package sent by Conti addressed to Guillermo Guerrero in San Diego. (Exh. 5 at 11-12.) On February 9, 2006, an inspector investigating the package called Conti to inquire. The inspector expressed security concerns about the package and asked permission to open it. (*Id*.) Conti told the inspector the package contained $10,000 and gave permission to open it. (*Id*.) The inspector told him that if there were no problems with the package, it would be delivered. (*Id*.) Subsequently, a narcotics dog alerted on the package, a warrant was obtained, the package was opened and seized on the same day. (*Id*. at 20-21.)

1    On February 13, 2006, Claimant contacted the postal inspection service hotline to inquire about the package. (Complaint ¶ 15.) When he called again on February 23, 2006, the postal inspector told him that a search warrant was obtained after a trained drug detection dog had alerted on the package. (Exh. 5 at 15.) The inspector explained the warrant was obtained despite Conti's consent to open it because the investigators had become concerned when the narcotics dog alerted on the package. (*Id*.) He further informed Conti that the investigation would continue. (*Id*.) When Conti found out that the package was not delivered, he spoke with Damien Guerrero ("Damien"), Guillermo's brother and the ultimate intended recipient of the package. He told him "that the package had been intercepted by the postal authorities and they thought it was somehow related to drug trafficking . . .." (Claim at 2.)

Pursuant to 18 U.S.C. § 983(a)(1)(A)(i), a written notice of seizure "shall be sent . . . as soon as practicable, and in no case more than 60 days after the date of seizure." The 60-day notification period expired on April 10, 2006. (*See* Exh. 5 at 9.) On March 8, 2006, a postal inspection supervisor authorized a 30-day delay in giving notice until May 10, 2006. (*Id*.) The government maintains the extension was granted pursuant to 18 U.S.C. § 983(a)(1)(B). On May 8, 2006, pursuant to section 983(a)(1)(C), the government applied ex parte and under seal to the federal court for an additional 60-day extension until July 8, 2006. (*Id*. at 1-19.) The request was based on the representation that "[a]ny action by the Government at this point will jeopardize the investigation, whether it consists of returning the subject currency to the target or giving him notice of forfeiture proceedings. (*Id*. at 7.) The requested extension was granted. (*Id*. at 1-2.)

On May 10, 2006, Conti sent postal inspectors a completed Forfeiture Claim Form with supporting documentation and a letter. (Exh. 1.) The claim was received on May 11, but Conti was informed it was not accepted because the government had not yet issued a written notice. (Exh. 2.) During the same time period, Conti's counsel spoke with the postal inspector and was informed that the money "was not being returned because Mr. Conti and/or the currency was the subject of a criminal investigation." (Decl. of William C. Roush.)

/ / / / /

1	On July 3, 2006, written notices of forfeiture were sent to Conti and other interested
2	parties.  On August 3, 2006, Conti filed his second Forfeiture Claim Form together with a letter
3	asserting that his original claim was properly filed on May 10.  (Exh. 3.)  On August 8, 2006, the
4	postal inspection attorney acknowledged receipt of the claim and expressed his disagreement
5	with Conti's assertion that his May 10 claim was properly filed.  (Exh. 4.)  On November 3,
6	2006, the government filed a complaint in this action.  Conti filed a claim and the instant
7	summary judgment motion.

8	Federal Rule of Civil Procedure 56(c) empowers the court to enter summary judgment,
9	and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex*
10	*Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the
11	"pleadings, depositions, answers to interrogatories, and admissions on file, together with the
12	affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
13	party is entitled to judgment as a matter of law." Fed. R.  Civ. P. 56(c); *see also Arpin v. Santa*
14	*Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

15	The party moving for summary judgment bears the initial burden of establishing the
16	absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  In a civil forfeiture case,
17	"the burden of proof is on the Government to establish . . . that the property is subject to
18	forfeiture."  18 U.S.C. § 983(c)(1).  If, as in this case, the moving party does not have the burden
19	of proof at trial, he may carry its initial burden by "produc[ing] evidence negating an essential
20	element of the nonmoving party's case . . .."  *Nissan Fire & Marine Ins. Co., v. Fritz Cos.*, 210
21	F.3d 1099, 1106 (9th Cir. 2000).  Conti's motion was supported by exhibits consisting of various
22	government documents, his claim under penalty of perjury, and a declaration from his counsel.
23	Accordingly, he carried his initial burden of production.  Under these circumstances, the
24	nonmoving party cannot "rest upon mere allegations or denials of his pleading." *Anderson v.*
25	*Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Rather, the nonmovant must "go beyond the
26	pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories,
27	and admissions on file, designate specific facts showing that there is a genuine issue for trial."
28	*Celotex*, 477 U.S. at 324 (internal quotations omitted); *Anderson*, 477 U.S. at 256; *Nissan Fire*,

210 F.3d at 1103. The government filed no evidence to negate a genuine issue for trial in this case.[1] Instead, the opposition focuses on issues of law.

Conti makes two arguments in support of his motion. He contends the forfeiture complaint was untimely because it was filed more than 90 days after his May 10, 2006 claim. He also argues that the government's July 3, 2006 written notice of seizure was untimely because the time to give notice should not have been extended. The stated ground for extension, to avoid seriously jeopardizing the investigation, was not present because the persons under investigation knew they were investigated.

Conti argues that summary judgment is appropriate because the government's civil forfeiture complaint was untimely filed. He sent his Forfeiture Claim Form together with supporting documentation on May 10, 2006. (Exh. 1.) The claim was received on May 11, 2006. (Exh. 2.) However, it was rejected on the grounds that Conti had "not yet been officially noticed" and that "the statutory process" could not be circumvented. (*Id.*)

18 U.S.C. § 983(a)(2)(A)&(B) provides for the filing and the timing of the claim:

> (A) Any person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure.
>
> (B) A claim under subparagraph (A) may be filed not later than the deadline set forth in a personal notice letter . . ..

Conti argues that his May 10 claim was not premature because the statute says a claim can be filed "after the seizure." He maintains that based on the May 10 claim filing date, the government's complaint, filed November 3, 2006 was untimely under section 983(a)(3)(A), which provides:

> Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint . . ..

---

[1] Although the government did not file any objections to Conti's evidence, it argued in its brief that Conti "glaringly provides no evidence that any of the other persons the government ultimately noticed . . . 'knew' or guessed that there was an on going criminal investigation." (Opp'n at 12.) This statement is incorrect. Conti provided evidence of his conversation with Damien. (*See* Claim of Mark S. Conti.)

When the government's complaint is untimely, it must return the seized property and terminate the forfeiture proceedings:

> If the Government does not [¶] file a complaint for forfeiture or return the property in accordance with subparagraph (A);
> . . . [¶] the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense.

18 U.S.C. § 983(a)(3)(B). The government disagrees with Conti's interpretation of section 983(a)(2).

"[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *see also United States v. Johnson Controls, Inc*., 457 F.3d 1009, 1014 (9th Cir. 2006). Section 983(a)(2) is unambiguous. It sets forth the earliest and the latest time to file a claim, with "after the seizure" being the earliest. 18 U.S.C. § 983(a)(2)(A)&(B). It does not include a requirement for a written notice prior to filing a claim. *See id.*

The government argues that Congress, in allowing 60 days to notice interested parties, "provided the seizing agency with, at a minimum, 60 days, to evaluate the seizure prior to being required to notice interested parties." (Opp'n at 6; *see also id.* at 9.) This argument is contradicted by the express language of the statute, which requires that notice be sent "as soon as practicable, and in no case more than 60 days after the date of seizure." 18 U.S.C. § 983(a)(1)(A)(i). The Civil Asset Forfeiture Reform Act ("CAFRA"), including 18 U.S.C. § 983, was enacted "[t]o provide increased protections for claimants." *United States v. Ritchie*, 342 F.3d 903, 910 n.1 (9th Cir. 2003). According to the legislative history, "the purpose of the sixty-day rule is to ensure that the forfeiture process is commenced promptly so that the claimant can have his day in court." Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. Legis. 97, 129 (2001).

Aside from following the express terms of the statute, the plain meaning interpretation is consistent with the significance of actual notice in civil forfeiture.

> Any person entitled to written notice in any nonjudicial civil forfeiture proceeding . . . who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if . . . the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e)(1)(B); *see also Upshaw v. United States Customs Serv.*, 153 F. Supp. 2d 46, 51 (D. Mass. 2001) (argument based on lack of written notice was rejected because plaintiff had actual notice of the nonjudicial forfeiture proceedings and had communicated with the seizing agency about the seizure). Accordingly, a person with actual notice of the seizure who did not receive a written notice and did not timely file a claim loses his or her right to set aside a forfeiture. It would be contrary to this provision to hold that a person with actual notice is prohibited from filing a claim until after receiving a written notice.

The plain meaning interpretation is also consistent with case law prior to the passage of CAFRA. Cassella, *supra*, 27 J. Legis. 97, 140-41 (citing *United States v. Fifty-Two Thousand & Eight Hundred Dollars*, 33 F.3d 1337, 1340-41 (11th Cir. 1994) (summary judgment for claimant reversed where government did not promptly issue notice, because claimant was aware of the seizure, and "nothing prevented claimants from filing a claim and cost bond *before* issuance of the notice." (emphasis added)). "While most claimants will wait until they receive formal notice of the administrative forfeiture proceeding to file a claim, nothing in the statute suggests that they must do so." *Id.* at 141.

The government argues that a contrary legislative intent can be inferred from the entire context of the statute as a whole. "A statute should be construed so that effect is given to all its provisions . . . ." (Opp'n at 10, quoting 2A Norman J. Singer, *Sutherland Statutory Construction*, §§ 46:06 - 46:07 at 181-92, 199 (6th ed. & Supp. 2005).) It maintains that the statute as a whole provides a "safety valve" by authorizing time extensions where providing notice during the initial 60-day period could harm a criminal investigation, and that the plain meaning interpretation would skew the statutory scheme "and the precisely negotiated and drafted balance of rights found therein." (*Id.* at 6-7, 9, 10.) According to the government, the statute as a whole demonstrates "that Congress did not intend the seizing agencies' carefully crafted right to protect an ongoing criminal investigation to be meaningless." (*Id.* at 10.) While the government

1  acknowledges that the claimants' rights were increased under CAFRA, they argue the claimants'
2  rights are not unfettered so as to be able to "force the 90 day clock to start by filing a pre notice
3  claim." (*Id*. at 11.)  For this reason, the government maintains that the 90-day period did not
4  begin until Conti filed his second, post-notice, claim.
5        The court disagrees.  The statute as a whole, including the provisions of subparagraph
6  (a)(1)(C) and (D) to delay notice, are not compromised by adopting the plain meaning of the
7  claim filing provisions.  If a claimant files a claim before the formal written notice is given and
8  the 90-day period for filing a complaint is triggered, the government has several options to
9  protect its investigation.  Nothing prevents the government from using subparagraph (a)(1)(C)
10 and (D) to delay sending written notice.  The written notice may be postponed "only if there is
11 reason to believe that notice may have an adverse result." 18 U.S.C. § 983(a)(1)(D).  Although a
12 written notice is unlikely to have an adverse result with respect to an interested party who
13 already has actual notice, it may have an adverse result with respect to other interested parties.
14 Upon the expiration of the 90-day period for filing a complaint, the government may move to
15 stay the civil forfeiture proceeding based upon a showing that "civil discovery will adversely
16 affect the ability of the Government to conduct a related criminal investigation . . .." 18 U.S.C.
17 § 981(g)(1).  The government may continue gathering evidence after filing the complaint,
18 because "[n]o complaint may be dismissed on the ground that the Government did not have
19 adequate evidence at the time the complaint was filed to establish forfeitability of the property."
20 *Id.* § 983(a)(3)(D).  Moreover, if the government identifies additional interested parties at a later
21 time in the proceedings, section 983(a)(1)(A)(v) allows for additional written notices even after
22 filing the complaint.  Following the plain meaning of the claim filing provision does not
23 eviscerate the provisions which serve to protect the government's interests.
24       Conti had actual notice of the seizure on February 23, 2006, after speaking to the postal
25 inspector who informed him that a narcotics dog had alerted on the package, a warrant was
26 obtained, the package was seized, and an investigation was under way.  (*See* Exh. 5 at 15.)  He
27 communicated with the seizing agency by telephone and by mail.  He filed his claim with
28 supporting documentation on May 10, 2006.  If he had not, he would run the risk, in the event he

did not receive a written notice for whatever reason, of being precluded from challenging the forfeiture. *See* 18 U.S.C. § 983(e)(1)(B); *Upshaw*, 153 F. Supp. 2d at 51. The government was required to file a complaint no later than ninety days after Conti's May 10, 2006 claim. *See id.* § 983(a)(3)(A). The complaint filed November 3, 2006 was therefore untimely. Pursuant to 18 U.S.C. § 983(a)(3)(B), summary judgment is proper because the government must promptly release the seized property.

In the alternative, Conti argues the government's July 3, 2006 written notice of forfeiture was untimely because the two extensions of time to send it, totaling 90 days, were not based on any permissible grounds. Section 983(a)(1)(A)(i) requires the seizing agency to send notice "as soon as practicable, and in no case more than 60 days after the date of the seizure." The 60-day maximum can be extended as provided by statute. "A supervisory official in the headquarters office of the seizing agency may extend the period . . . for a period not to exceed 30 days (which period may not be further extended except by a court) . . . ." *Id*. § 983(a)(1)(B). "Upon motion by the Government, a court may extend the period for sending notice . . . for a period not to exceed 60 days, which period may be further extended by the court for 60-day periods, as necessary . . . based on a written certification of a supervisory official in the headquarters office of the seizing agency . . . ." *Id*. § 983(a)(1)(C). In this case the postal inspector extended the time for 30 days pursuant to subparagraph (B), and the court further extended it for 60 days based on the inspector's certification as provided in subparagraph (C). In either case, the extension must be based on a determination that "conditions in subparagraph (D) are present." *Id*. § 983(a)(1)(B)&(C). Subparagraph (D) provides:

> The period for sending notice under this paragraph may be extended only if there is reason to believe that notice may have an adverse result, including--
> (i) endangering the life or physical safety of an individual;
> (ii) flight from prosecution;
> (iii) destruction of or tampering with evidence;
> (iv) intimidation of potential witnesses; or
> (v) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

The government's records do not show the grounds for the postal inspector's initial 30-day extension. The court notes the extension was granted on March 8, 2006, more than a month before the expiration of the 60-day notice period pursuant to section 983(a)(1)(A)(i). (Exh. 5 at

9.) The government's motion for a subsequent 60-day extension by court was based on subparagraph (D)(v) -- "seriously jeopardizing an investigation." (Exh. 5 at 4.)

In making its motion to the court, the government provided no facts specifying how the investigation would be jeopardized by giving notice. (*See* Exh. 5.) The closes the government came to an explanation was a statement in the inspector's certification that "[n]otice of seizure would be detrimental to the investigation by alerting suspects to the seizures." (*Id.* at 9.) The government did not bring to the court's attention that the postal inspector told Conti about the investigation and that the only individuals investigated were Conti and Damien. These facts were buried deep in the exhibits. (Exh. 5 at 11, 14, 15, 19.) On February 23, 2006, Conti was told by the postal inspector that they had obtained a search warrant for the package after a positive canine alert for the presence of the odor of controlled substances, and that they sought the warrant because they were concerned about the canine alert. (*Id.* at 15.) The postal inspector inquired about the reasons for sending $10,000, and Conti explained he wanted Damien to purchase a car for him, as Conti intended to relocate to San Diego. (*Id.*) Conti was then asked if he was involved in drugs, which he denied. (*Id.*) The postal inspector told him "they would continue their investigation." (*Id.*) Conti was asked for contact numbers for Damien and two other individuals. (*Id.*) The conversation left little to the imagination about the existence and the subject of the investigation. The government did not contend then and does not contend now that Conti was required to keep this conversation confidential. As could be expected, when the package was not delivered, Conti told Damien about his telephone conversation with the postal inspector, including that the package was intercepted by the postal authorities, who thought it was related to drug trafficking. (Claim at 2.) According to government records filed in support of the request for extension of notice, the target of the investigation was Damien. (Exh. 5 at 19.) It appears that Conti was also the subject of the investigation. (*See id.* at 11.)

Based on the facts known to the government at the time of the application to the court on May 11, 2006, its contention that to issue a notice of seizure would seriously jeopardize the investigation was disingenuous at best, especially with respect to the suspects Conti and Damien.
/ / / / /

> If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a alter time.

18 U.S.C. § 983(a)(1)(F). In this case an extension of time was apparently granted because the government in its confidential filing did not bring to the court's attention the pertinent facts. Instead, these facts were buried in the exhibits. (Exh. 5 at 11, 14, 15, 19.) The extension was not warranted. Forfeitures are disfavored, and "forfeiture laws and their notice provisions are strictly construed against the government." *Ritchie*, 342 F.3d at 910 (internal citations, quotation marks and ellipsis omitted). The government's notice of seizure sent on July 3, 2006 was therefore untimely. Conti's motion is granted for this alternative reason. *See United States v. Assorted Jewelry*, 386 F. Supp. 2d 9 (D. P.R. 2005).

On the foregoing alternative grounds, Claimant Mark Conti's summary judgment motion is **GRANTED**.

**IT IS SO ORDERED**.

DATED: August 13, 2007

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL